Technology v. FanDuel. Good morning. May it please the Court. FanDuel's red brief has simplified the issues on appeal in two telling ways. First, it makes no attempt to defend the Board's erroneous claim construction, which served as the basis for finding that Kelly teaches the authorized claim limitation. And second, FanDuel does not contest our proposed claim construction. For purposes of this appeal, the Court should assume that our proposed construction for authorizing limitation applies. And that construction is wholly consistent with the arguments that we made before the Board, which the authorizing limitation means prohibits the operation of a video game based on user age in the first instance. Am I right in thinking that when this case came up to the hearing level at the Board, both sides looked up at presiding Judge Grossman, I think it was, and said, Well, for claim construction, the plain meaning of the terms applies, sir. They both did, Your Honor. That's exactly correct. So they didn't say, Well, we've got some differing views about what the plain meaning is. Some of us think the plain meaning is prohibited. Some of us think maybe the plain meaning is something else. They didn't say anything to them about that. So the Board had to muscle through what it could, and it looks at the specifications of the patent. There's only one place in the whole specification that talks about age, and there it has the linkage of the two factors that the Board picked up on. And then the Board issues its opinion, and nobody files a petition for reconsideration. And it sort of says, Well, we did it. We got you. We played that game great. We knew what we thought, but we didn't tell the court. And when the court screwed up, we didn't tell it what it thought it did wrong in the reconsideration, and we figured we'll just take, since it's all de novo, we'll go up to the Federal Circuit and hope two judges agree with it. Is that any way to run a railroad? I don't believe so, Your Honor. In fact, the Board was very clear what our position on claim construction was. Both on A-17 and on A-19, the Board recognized that the parties have argued their respective claim constructions on the merits. And on Appendix 19, they state that the patent owner contends authorizing gameplay, as used in Claims 1 and 16, requires restricting authorizing gameplay in its entirety. It goes on to note that while the petitioner disagreed with this construction, it offered no construction of its own. So to answer your question, the fact of the matter is that the Board clearly erred in conflating two different claim terms with authorizing in the challenged claims and then in the unchallenged claims combining the adjusting claim feature, which is separately disclosed and separately claimed in the A-18 patent. So there's no doubt that there's legal error here. I don't think that there was, based on the hearing and the record... There was no motion for reconsideration to say, gee whiz, Judge Carson, you put your foot in the... There was no motion for reconsideration, Your Honor, that's correct. The result of the Board's legal error, however, is not harmless, it's prejudicial. There's good reason to believe that the Board would have obtained a different result had it adopted our claim construction, which is not contested today, and not erroneously also included... Potentially, Your Honor. You can wait and take your shot up here. That was the strategic decision. And it's clearly prejudicial error because nowhere in Kelly does it say in the first instance that a user is prohibited from operation of a video game system based on age. And I think it's important to put... Didn't the Board make precisely that finding or draw that conclusion? The Board did not. The Board's analysis based on its erroneous claim construction was confusing at best, but it did not make a specific finding and certainly, to the extent that my friends on the other side may argue that it does, it certainly wasn't supported by substantial evidence because nowhere does FanDuel's expert, Mr. Kitchen, ever say that Kelly prohibits operation of a video game in its entirety based on age. I think that question may be best answered, Your Honor, by hypothesizing what the Court could have done but didn't do as well, which is if it did find that Kelly did in fact prohibit in its entirety, it could have agreed with our proposed claim construction as it understood it at the time. But you keep saying in its entirety. That's not part of the claim construction. It's not part of the claim construction that's being proffered today. I think in terms of... It's not part of what you proffered. It's not part of what the Board found. This in its entirety thing is really the crux of whether you win or lose, and yet that isn't an argument you made before them or before us. I mean, I guess I could say you sort of made it in the back doorway by saying Kelly doesn't disclose, but that's kind of the heart of it. Prohibits operation of a video game based on user's age. Does that mean prohibit operation of the game in part or in whole? Because that's what it comes down to, because Kelly does at least disclose, prohibiting it in part. And it's in whole. It's a binary issue that's made in the first instance. But let me just correct one thing, Your Honor. We do argue throughout the Board proceedings, and it's recognized on A-19, that they completely understood that it's restricting authorizing game play in its entirety. And that's at the top of Appendix 19. And they rejected that claim construction, adopted one that erroneously included this whole idea of adjusting, which can only happen to game play once that decision is made as a threshold determination. Are you authorized to play? What does the specification say in terms of adjusting? I remember reading a part of it that it said basically educational games can be adjusted depending on age. You know, you have an educational math game for a kindergartner, it might be addition. For a first grader, it might be multiplication, something like that. Right. And that goes more to the adjusting, which is taught in Kelly, not to the authorization. If I could refer, Your Honor, to A-104. It's at Column 3. And there's really two separate disclosures that are separately claimed. On one hand, we have the authorizing claim limitations. Those are found in the challenge. Wait, Column 3 is long. So what line do you want to reference in? I'm sorry, Column 3 starting at line 39. Right. Okay. And there's two separately disclosed embodiments taught here. It says, It will be appreciated that a controller of the present invention provides an advantage in allowing each child in a household to have a personalized controller. By including the age of a user, it will be appreciated that amusement games designed for a specific age group is not operated by an inappropriate user. Thus, operation of a video game can be prohibited based on the user age. That's authorization. It's a binary threshold decision. You can either operate the video game system or you can't. And that's what the claims of the 818 say. It's a video game system. It's not adjusting play of some game. We're talking about a video game system. So a user, if I may expand a little bit on the example that we have on bottom of page 9, top of page 10 of our reply brief, there's a video game Mortal Kombat. It has an age threshold associated with it. If my 14-year-old boy picks up that cartridge, Mortal Kombat, and puts it in the controller, this personalized controller that is part of the claims determines whether or not he's age appropriate to play that video game. If the personalized wireless controller says, yep, he's appropriate, then it authorizes or allows gameplay. If it's not, it doesn't. It's a binary threshold decision. I have a daughter who's 12. If she were to pick up that same video game and insert it in the cartridge and use her own personalized controller, as the claims read, with her age in that controller, it would say she does not meet that appropriate age level. I certainly understand your argument, but tell me why column 42 at the very bottom of Kelly and carrying over onto 43 doesn't disclose that when it says age can be a predefined characteristic that can prohibit you from participating in tournaments. Okay, so a tournament is not a game. It feels like a game. Well, our candles expert agrees with us that a tournament is not a game. If we go to appendix 4245, he was asked this question. 4245? 4245. All right. And while you get there, a tournament is a mode of a game. Okay, so page 11, he's asked, so a tournament is one mode in which you can experience gameplay. At line 19, Mr. Kitchen, Fandle's expert, testifies, so tournament is more about the structure of the event than what you're playing. If I was in a room with a bunch of game designers and I said, what kind of game do you want to build? And one guy says, I want to build a chess game. I want to build a baseball game. I want to build a golf game. It would make no sense for the other person to say, I want to build a tournament. Well, what's a tournament? It's not a game. Tell me about gameplay. So a tournament is just how it's all structured. And that's perfectly consistent with the disclosure in Kelly. I think the other reference that the board relies on is column 22, which is at appendix 3454. And this goes to those prerequisites, Your Honor, the certain conditions requirement that the board relied on, remembering against this backdrop that they also improperly included this adjusting limitation. That's exactly what Kelly discloses. But what Kelly doesn't disclose anywhere is prohibiting gameplay in the first instance as a threshold issue. So suppose that I agree with you on your claim construction. Suppose that I even agree with you that Kelly talks about prohibiting tournaments based on age and adjusting potentially based on a predefined characteristic such as age. But this is obviousness. This is an obviousness rejection. What the heck does it get you other than more legal fees if I send that back? I think we win, Your Honor. I think we win under those. How in the world do you win? Because Kelly, because let's look at the goal in Kelly is a prize redemption system. That's what it is for video games. The essence of Kelly is to encourage gameplay, not to prohibit it. In every instance in Kelly, in every embodiment, a user is allowed to play the game. It's not prohibited based on a user's age. They can always play a credit game. The gameplay is only adjusted, not authorized, after that threshold inquiry. And that's exactly what claim, that's exactly what Column 22 at 3454 says. It talks about, for example, But Column 22 says in some embodiments players can be required to meet certain conditions before participating in a game. So it does allow you to prohibit people from playing in a game altogether. It does not. It's only in a tournament. The only disclosures here. It says in a credit game or a tournament. Or in a tournament. So how can you say it's only in a tournament when it says in a credit game or in a tournament? It does say that, Your Honor. But if you go on, the rest of the disclosures are very clear. The rest of the disclosures are four examples. So how is that? They are four examples, but nowhere does it say. Nowhere does it give an example of the thing it expressly says? Nowhere does it give an example where gameplay is prohibited in its entirety as a threshold issue. Except that it says it can be. I don't believe that's exactly what it says. And I think they parse out the words. It says in some embodiments players can also be required to meet certain conditions before participating in a credit game or a tournament. What it's saying there is you can play in a credit game. You might not always be able to play in a tournament. And that's what the disclosures are clear about. That you can hit that credit button as many times as you can. You might need to hit it five times. You might need to hit it ten times in order to participate in a tournament. A tournament is a mode. And I think based on this, it says the player can either choose to play a prize credit game or a tournament. It certainly does describe that certain requirements are necessary to participate in a tournament. But that's not a game. If we look a little bit lower in column 22 at 59, for example, it says an example of a selection screen showing the player to choose the type of redemption game is shown in 5e. Well, so let's just assume that I agree with you most of the way but not all of the way. Meaning certainly all the examples you're going to point to are about a tournament. I don't disagree with that. But the predicate sentence that is the topic sentence of the entire paragraph is players can also be required to meet certain conditions before participating in a credit game or a tournament. So assume that I'm going to give the idea credit game meaning because I don't see how I cannot give it some meaning and have it mean something since it's disclosed. Isn't that enough? I mean, isn't that enough for the agency? And why do I have to send it back? I think we need something more there, Your Honor. I don't think it's enough because it's not a clear finding. It's not supported. Well, I guess that's what I'm wondering is did the agency sort of fail? I mean, what I'm not going to do is do the agency's job for it on appeal. So did the agency sort of fail to clearly articulate this in some way to you so that even if I think this, I shouldn't do it on appeal? There's no question that the reasoned analysis is very unclear. And they don't make any specific findings that are supported by any evidence, much less substantial evidence, that go to the fact that you cannot always play a credit game as disclosed in Kelly. In fact, on pages 9 through 11, Mr. Kitchen concedes the fact that you can always play a credit game, that you're sometimes not allowed to participate. That's in our reply brief, Your Honor, that you're sometimes not allowed to participate in a tournament game. That's something different. That's adjusting. That's a different claim to embodiment than the unchallenged claims. Yeah, but Mr. Kitchen can say that, but if the board finds the reference discloses something, nonetheless, Mr. Kitchen's testimony is not really relevant. Well, and the fact of the matter is it's almost asking you to prove a negative, Your Honor, because nowhere in here does it say that you are sometimes prohibited from playing a tournament game based on user's age. It doesn't say that anywhere. In fact, the board recognized that in 22 with respect to these certain conditions requirement. It doesn't disclose age at all. It's not until 42, column 42, that it does. But I think that's really neither here nor there, Your Honor. The fact of the matter is that nowhere, nowhere does it say that you can't play a credit game. If I could just briefly turn your attention to— I'll just alert you of the fact that you've exceeded all of your time. I realize you've had a lot of questions, so if you have one more quick statement, fine. I'll come back, Your Honor. Thank you.  May it please the Court. I'm going to begin with the notion that the board did not make an express finding with respect to the disclosure of Kelly. And I would refer the Court to appendix page 40, which is the final written decision. And to the very bottom of page 40, and as a lead-in to this, I would say there are nine pages preceding this, where the board is discussing expert testimony as well as the disclosure of Kelly and what we're going to look at here in a minute. And at the very bottom of the page, the paragraph that begins at the last two lines, the board states, based on the disclosures in Kelly and the testimony of Mr. Kitchen and Dr. Akel, we find that a preponderance of the evidence establishes that Kelly's disclosure, that a player must meet predefined characteristics, such as age, experience, and other collected data, before the player is authorized or allowed to participate in a game, is a game control that prohibits operation of a video game based on the user's age. That is an express finding by the board that comports with the very construction that you have heard from my friend on the other side. The construction that everyone was pursuing during the underlying proceeding was that gameplay is authorized based upon age. The claim limitation is in question. So just to be clear, and you lose no points for agreeing that something is wrong when it clearly is, you agree that to the extent that the board said authorizing and adjusting, that the adjusting part is wrong. Because the claim does delineate two different concepts, authorizing on the one hand and adjusting on the other. Other claims describe the adjusting. Well, the specification. The claims are included in the specification. The specification discloses two different embodiments. One is, or maybe more than two, I don't know. But there's authorizing and then there's adjusting, and those are two different things. So to the extent that the board said prohibit or adjust is covered by authorizing, it's too broad. It doesn't mean they didn't make specific fact findings that still cover under the correct construction, but you do agree the construction is wrong, right? I agree that the or adjust portion of the construction is not correct. And my point on appeal and for affirmation of the board's findings is simply that the board's findings were entirely and totally that Kelly prohibits game play. How did they end up with this or adjust language? Nobody argued that to them below? Is it just a mistake on their part? I would be hypothesizing, but I imagine what happened is they saw the embodiments in the specification but didn't read through the remainder of the claims to see that there's a separately claimed embodiment. That would be my guess. They did a word search of the spec for age and it only came up once. And they looked at that. And to the point of this appeal and the discussions here, it is fine. It's not the best case scenario, but it is fine for the board to make an error if the error does not affect the decision. So the question is whether or not Kelly teaches prohibiting, right? That's the question. You want to just run through Kelly real quick, column by column, and point out where Kelly shows prohibiting? Sure. I started with the board's finding. And where I would go in Kelly, there are two columns in Kelly that the board relied upon. So I'm not going to go column by column, but I'll go with what was argued in the record. It helps if you tell me the column. Absolutely, Your Honor. In column 22 of Kelly, this is at appendix 3454, starting at line 43, we have what the board referred to as the required conditions disclosure. It states, in some embodiments, players can also be required to meet certain conditions before participating in a credit game or a tournament. That's what the board referred to as the required conditions disclosure. I would highlight here that it's a required condition before participating. So if you can't participate, you are prohibited from participating. So that is the first disclosure that the board relied upon. But I think that the record supports what Mr. Schaefer argued, that a tournament is not a game and that one wouldn't refer to it as a game. For example, if I had a video game and it allowed for lots of different modes of play and one particular mode was excluded because someone was under a particular age, they would still be allowed to play the game, they just wouldn't be able to play one mode of the game. So to the extent that this specification in Kelly focuses on tournaments, I think that Mr. Schaefer is the better of the argument that that's not a game. I think that's not the better of the arguments on the record. I'm slightly jumping back and forth here. Did you want me to go through the rest of this? It's a credit game as well as a tournament. It's a credit game as well as a tournament. And I think the point that the board found, and I can take you to this as well, another finding on the record looking at all the testimony of the experts that were presented in this case is that a game is played within the context of a tournament. Or it can be played outside the context of a tournament. But where you have, and this was the point of the finding by the board, where you have a game in a tournament that has an age restriction, in other words it's an over 18 game, and a person that is playing or attempting to play that is 15 is not allowed to participate in that game, then you have an age restriction on that game. With all due respect, I feel like that's what the adjusting limitation speaks to. The adjusting limitation allows for access to certain aspects of the game relevant to age and not other aspects depending on age. I feel like you now are morphing in exactly what I think adjusting is into your construction of authorizing, and that causes me pause. It is two separate games. If there is a poker game going on that is for people over 18 years old, that game of poker is being played by people over 18 years old. If a person that is 15 attempts to play in that game, they are not allowed to participate. They are prohibited. Now there can be another game of poker that is being played by any age groups. That is a different game. That person that is 15 playing in that different game is not participating. But that's exactly what the spec describes as adjusting when it said within a video game, you can have some educational games adjusted based on the user's age. That's exactly the Column 3 spec's adjusting language. Let me try to help you out on this because it's not. If you have a game such as an educational game, and the user comes into that game and says, I'm six years old, I need an easier version of the game, there is no question about participation. That user is going to be able to play the game, and the game is decreased in difficulty from some higher level of difficulty to a lower level. But bear with me, there is not any question as to whether that player could participate. I don't agree with you because it says, thus, operational video game can be prohibited based on user age. Therefore, the controller provides a minimum level of supervision. Further, educational video games can be adjusted to the age of the user. That's exactly the scenario where they're allowed to play, but only age appropriate versions for them. That's what the spec defines as adjustment. It would be a different game. If you have changed the game in order to, if you have a different game that a person can play, they're not prohibited from playing. Let me take you again to the findings of the board. I think it's a helpful frame of reference. This is at the bottom of page 39 of the board's final written decision. Here the board has considered this exact argument, whether playing a different game is in fact a prohibition. If you're allowed to play a different game, but you're prohibited from one. The board states, citing the two disclosures from Kelly, that where you are meeting established conditions as a prerequisite to participation in a game or a tournament, if a player satisfies the prerequisite, the player is authorized to play. If a player does not satisfy the prerequisite, the player is not authorized to play. The fact that a person may qualify for a different game, such as a different age group or a different experience level, is irrelevant to the claim convention. It goes on to describe the age-based restriction we've been talking about. That's because the board is operating under its own construction. When it uses the word authorized, it means prohibits or adjusts. This is a very circular argument by you. I can't see how that could prevail. The board's operating under its construction, which includes both of these things. It's not. If you go on with the board's analysis on the top of page 40. The board construed the words authorized as meaning prohibited or adjusted. Continue with the board's analysis, Your Honor. Okay. At the top of page 40, allowing a player to play a game or tournament in one category, for example, players under 18 years old, is in fact restricting or prohibiting that player from other categories, e.g. players over 18 years old. The under 18-year-old player is excluded entirely from the over 18-year-old games. It is an exclusion. It is a prohibition. I understand where you're going with this, but when you have two games, it is not the same thing as having one game that has been adjusted. If a 15-year-old is prohibited from playing an 18-year-old game, they can't play in it. That's a prohibition. I guess I don't see how that can be reconciled with my understanding of what adjustment is, because the spec clearly contemplates a 15-year-old being able to do certain kinds of educational games, not being able to do others, and a 12-year-old being able to do certain kinds of educational games and not others, and the spec calls that adjusting. So I feel like I have to be true to the spec. What you're saying in the specification is, it doesn't say adjustment prohibits you from one and allows another. It doesn't say that. It says the game that the user wants to participate in is adjusted. There is nothing about where it describes adjusting. There is no discussion of participation. Those are separate concepts. You can either put a block on participation, or you allow participation, but you adjust the game. Those are two completely different concepts. You know, it's so funny. You are fighting me so hard on what is your much harder argument to convince me of, but you have not at all embraced, and I don't understand why you're not saying to me, even if you think that, Judge Moore, you still can't get around the words credit game and column 22 of Kelly. Like, you are fighting me on an argument that I don't know if you can win with me. Maybe you can win it with my colleagues, but I don't know that you have to. You're fighting the harder argument, and I don't know why. What does credit game mean? Is there something about this disclosure in Kelly that doesn't let you win, such that you have to fight this harder argument and not rely on this? I'm not sure why you're not retracting to the position that even if I have a problem, which I clearly have and have demonstrated, that you should still prevail under column 22. So tell me about column 22. When it says credit game,  between tournament play and versions within a game? Your Honor, I think it is not just a point of stubbornness. I believe in my heart of hearts that the board got the decision correct and the final written decision. Except for the claim construction, which you agree the board got wrong. So in your heart of hearts, you believe the board got the decision partially correct. I believe the board's analysis under the correct claim construction, which is prohibits, is correct. It's a four-chamber heart. Got at least one with a problem. We all have four chamber hearts. All right, go ahead. In Kelly, Your Honor, column 22 is the first disclosure that we talked about. And again, I would highlight, it's a question of participation. I think that's a key thing to understand. Are we talking about participating or are we talking about how there will be participation? And then in column 42, where there is the mention of age as a predefined characteristic, and this is appendix 3464, column 42, the paragraph is beginning at line 63, but it goes through the end. And once again, there you see a disclosure of a participation limitation in Kelly. There is a limit on participation based upon age. And I'm gonna finish, Your Honor, with the board's discussion of those disclosures and how they directly- Just to be clear, I wanna make sure I understand this sentence in page 42. It says additional fields can be provided in the tournament table to allow the operator to designate for their characteristics of tournaments. Is this only related to tournaments or are these characteristics, I should assume, relate to gameplay as a whole? I want you to start the assumption with the idea that I don't think tournaments satisfies it. Okay, this disclosure specifically is talking about tournaments, but it's preceded by a discussion of games within a tournament. So, scud attack, you'll see up higher in the column 42, lines 15, the scud attack tournament. The problem with the assumption, Your Honor, is that Kelly uses the games, there are games within a tournament, that Kelly uses games and tournaments in the same exact context. So you have a poker game, you have a scud attack game within a tournament. So then when it places constraints on the tournament, it's saying I'm placing constraints on the tournament of scud attack, the game. Playing games. Yeah, and so tournament and game are used synonymously in Kelly because they are one and the same thing. Well, gosh, that would be awfully bad for you because that would mean the one place where you may have had me, which is column 22, you no longer have me because you just told me tournaments and games are exactly the same. So when it says credit game, I shouldn't interpret that to mean barring your access to the video game as a whole. That could just be one game within a tournament? There is a concept of a game. The game can be played as a credit game, which would be like a one player game or a two player game, or that game can be played within a tournament. That's the disclosure of Kelly. And the finding of the board... You know, when you want to get a Gmail account, you have to be over 18. I don't know if you know that. My daughter figured that out. She put her birthday in last weekend and suddenly was not permitted to have a Gmail account even though her older brother, who by the way is 18, has one. That's prohibited. I'm not sure if you're just prohibited from certain aspects of the Gmail account, whether or not you're actually prohibited from the Gmail account. The disclosure in Kelly where you have these condition requirements, the required conditions disclosure and the age disclosure, it's a prerequisite to participation. So it is akin to your daughter not being allowed to have a Gmail account. She was prohibited. I'm going to finish, Your Honor, because my time is up. I will wind down. If I could point you to two things. First of all, in the final written decision, this question of tournament versus game that Your Honor is concerned about, page 40, three quarters of the way down, there is a sentence where the board says, there is no persuasive evidence that a skilled artisan would ignore the clear disclosure in Kelly to use age to authorize or prohibit game play merely because it is disclosed in the context of games played in a tournament. So the issue that you're raising was considered fully by the board and a finding was made upon that What page are you on? Page 40. And three quarters of the way down through that paragraph, there's a sentence, there is no persuasive evidence. And finally, on page 36 of the final written decision, and I promise, Chief Judge, that this is the last one. On page 36 of the final written decision, the second full paragraph, this is key because it goes to your question of the very differences you've been talking about, Judge Moore. Kelly's required conditions disclosure discloses that players can be required to meet certain conditions before participating. Participating is the words used in Kelly. This is not a disclosure of how to play a game or a disclosure of the group to which a player will be assigned. It is a disclosure of imposing conditions or requirements on whether a player will be allowed to play the game or participate in the tournament. The board made the correct findings under the prohibits claim construction. Thank you, Your Honors. Thank you. We'll be still at two minutes of rebuttal. Hopefully I can cut through this for Your Honor. Column 22, which is the prerequisite disclosures that my friend on the other side seems to rely on, it doesn't mean prohibit. This is exactly what we're talking about in Kelly when we're talking about adjusting. It does not preclude operation of a video game in the first instance. If we look at 3454 at line 59, I think this example, this embodiment is telling. It says an example of a selection screen allowing the player to choose the type of redemption game as shown in 5B. The main window displays information about the selected game, which in this example is quiz show. The game is quiz show. When he talks about participation, that's all about tournament play. That is later adjusting once you're playing the game quiz show. If we look at figure 5B, which is at appendix 3431, this becomes abundantly clear. 5B shows the video game system. The game is quiz show. You have other games that are listed on the right, such as Scud Attack, Solitaire, 21 for Fun. The user can always play the one-player or two-player credit game. There's no disclosure anywhere in Kelly that says that a user is prohibited from playing those games, and counsel couldn't point one out. The question becomes, is whether or not when you go to select one-player, two-player, or tournament mode, that's what we're talking about. We're talking about modes. Can you participate, based on Kelly, in a tournament? Well, you have to have a certain number of histories behind it to participate in a tournament. But nowhere does it say that you can't participate or you can't play the game quiz show based on a user's age. And it kind of goes back to my original analogy. If my 12-year-old daughter came to me and said, I put in the game Mortal Kombat. It's restricted for age 15 and down, and said, yeah, I was able to play a game. I could play a one-player game, but that I couldn't play the tournament game, well, I wouldn't be happy about that. That's adjusting the game. That's what Kelly teaches. That's all that Kelly teaches. It doesn't teach prohibiting a credit game or any game in the first instance or as a threshold matter. That's a separate embodiment that's given separate meaning in these challenged claims as compared to that in the unchallenged claims. Thank you. Thank you. We thank both sides. The case is submitted and concludes our proceeding for this morning. All rise. The honorable court has adjourned until tomorrow morning at 10 a.m.